ROBERT S. BREWER, JR.
United States Attorney
MELANIE K. PIERSON
Assistant U.S. Attorney
California Bar No. 112520
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7976
Fax: (619) 546-0450
Email:  Melanie.Pierson@usdoj.gov

Attorneys for the United States

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>JESUS MAURICIO REYES,<br><br>　　　　　Defendant. | Case No. 20cr2711-WQH<br><br>**GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS;**<br>　**1. TO COMPEL DISCOVERY**<br>　**2. TO PRESERVE EVIDENCE**<br>　**3. TO FILE FURTHER MOTIONS**<br><br>DATE: November 5, 2020<br>TIME:  9:00 a.m. |

　　　COMES NOW the plaintiff, United States of America, by and through its counsel, United States Attorney Robert S. Brewer, Jr., and Assistant U.S. Attorney Melanie K. Pierson, and hereby files its Response and Opposition to Defendant's Motions to Compel Discovery and Preserve Evidence.  Said response is based on the files and records of the case.


　　　DATED:November 3, 2020　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　ROBERT S. BREWER, JR.
　　　　　　　　　　　　　　　　　United States Attorney

　　　　　　　　　　　　　　　　　/s/Melanie K. Pierson
　　　　　　　　　　　　　　　　　Assistant United States Attorney

I.
STATEMENT OF THE CASE

On August 4, 2020, a complaint was filed in the Southern District of California, charging defendant Reyes with Conspiracy, in violation of Title 18, United States Codes, and Smuggling, in violation of Title 18, United States Code, Section 545. The defendant appeared, pursuant to a Notice to Appear, was arraigned on August 27, 2020, and entered a not guilty plea.

On September 10, 2020, the defendant waived indictment and was arraigned on an Information with the same charge, and again pled not guilty. A hearing on all motions was set for November 2, 2020. On October 27, 2020, the hearing date was continued until November 5, 2020.

On November 3, 2020, defendant Reyes filed motions to compel discovery, preserve evidence and to file further motions. The United States responds to those motions herein.

II.
STATEMENT OF FACTS

At about 10:15 a.m. on July 22, 2020, Jesus Mauricio REYES entered the United States at the Otay Mesa POE as the driver of a Dodge Magnum, with Mariaelisa MACIAS as a passenger. The CBP Officer twice asked REYES if he had anything to declare, and REYES declared nothing. MACIAS declared only cookies and beer. As the CBP Officer inspected the vehicle, he located several bottles of pesticides mixed in with clothing within bags of luggage. The vehicle was then referred to the secondary lot for further inspection. In the secondary lot CBP officers seized 24 one-

liter bottles of "Biozyme," 7 one-liter bottles of "Furadan," 5 one-liter bottles of "Biomec," and 1 nine hundred and sixty milliliter bottle of "Tetrasan,".

After being advised of his Constitutional rights and waiving his rights in writing, REYES stated that he and MACIAS went to Mexico to visit family. He initially stated that an aunt of MACIAS in Mexico gave them the pesticides to bring to another of MACIAS's aunts in the U.S., who owns a nursery in San Fernando, CA. REYES then changed his story, and stated that a friend of his in Mexico said that he could sell the bottles of pesticide in the U.S., and REYES stated that he intended to sell the bottles of pesticide in the U.S. for $100 each. REYES also stated that MACIAS was aware of the plan to sell the pesticides in the U.S.

After being advised of her Constitutional rights and waiving her rights in writing, MACIAS initially stated that the pesticides were for an aunt in the U.S. that owns a nursery. She then changed her story and stated that the pesticides were for people that grow plants. MACIAS declined to provide additional information.

According to the labels, the 24 bottles of "Biozyme TF" contain a fertilizer mix of manganese, magnesium, zinc, boron, sulfur, micronutrients, dilutes, conditioners, and the active ingredients gibberellin, auxin, and cytokinin. The plant hormone extracts gibberellin, auxin, and cytokinin are plant growth regulators, and according to the Mexican product website constitute a hormonal complex used in seed treatments to promote rapid and uniform germination, and

in foliar applications to increase flowering and fruit retention. EPA special agents advised that in the United States, the plant growth regulators gibberellin, auxin, and cytokinin are regulated as pesticides, but are not restricted use pesticides. However, although their use is not restricted, they must still be registered with the EPA and their importation requires a Notice of Arrival.

According to the labels, the seven bottles of "Furadan" contained the active ingredient carbofuran. In the United States, carbofuran is a cancelled pesticide, and may not be imported or sold in the United States.

According to the labels, the five bottles of "Biomec" contain the active ingredient avermectin B1. In the United States, avermectin B1 is a restricted use pesticide. Federal regulations limit the sale and use of restricted-use pesticides to applicators certified by a program approved by the EPA, who have received training in mitigating the dangers of such pesticides, and persons under their direct supervision. A search of the database of certified pesticide applicators in California revealed that neither REYES nor MACIAS hold such certification.

According to the label, the bottle of "Tertrasan" contains the active ingredient etoxozole, which is not a restricted use pesticide, but must still be registered with the EPA.

Federal law prohibits the distribution and sale of canceled or unregistered pesticides. 7 U.S.C. §136j(a)(1)(A). Only pesticides registered with the EPA may be imported or sold in the United States. 7 U.S.C. §136o(c). All pesticides intended for use in the United States

must bear their EPA registration number on their labels, preceded by the phrase "EPA Registration No." or "EPA Reg. No." 40 C.F.R. §156.10(e). In addition, all required information on a label must appear in the English language. 40 C.F.R. §156.10(a)(3). The containers of pesticides found with REYES and MACIAS were labeled only in Spanish and bore no EPA registration numbers.

The lawful importation of pesticides into the United States requires a Notice of Arrival to be provided to U.S. Customs, pursuant to 19 CFR 12.112. REYES and MACIAS provided no such Notice of Arrival for the pesticides in this case.

III

POINTS AND AUTHORITIES

A. THE GOVERNMENT HAS AND WILL COMPLY WITH RULE 16 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE.  ANY ADDITIONAL DISCOVERY DEMANDS OF THE DEFENDANT SHOULD BE DENIED.

1. Status of Discovery

On August 8, 2020, the government made available approximately 135 pages of discovery, and a disc containing the recorded statements of both co-defendants. The initial discovery included the CBP reports of the primary and secondary officers, the referral slip, copies of the documents seized from the co-defendant, the notes of the interviewing agents, the signed advisement of rights forms, the seizure forms, the photographs taken at the Port of Entry, and the recorded interview of the two co-defendants at the Port of Entry. On August 13, 2020, the defendant was provided with his criminal history report.

Warrants were obtained to search the phones of both co-defendants. When the results of the search are available (which could be weeks or months, depending on how long it takes to unlock the phones), they will be disclosed. The videos from the primary and secondary inspections at the Port of Entry have been requested and will be disclosed as soon as they are received.

To the extent that any evidence of prior similar acts exists, it may be found in the statements of the defendants or in the data downloaded from the phones.

This is a reactive case originating from the seizure at the Port of Entry. Accordingly, there are no records of prior investigation of the defendants for this offense. The government has not conducted any scientific testing in this case (nor is any anticipated) and does not anticipate the need for expert testimony. The government will make the appropriate inquiries regarding potential impeachment of its witnesses and disclose all *Giglio* and *Henthorn* materials one week before trial.

The government, to date, has provided discovery consisting of approximately 135 pages of documents and two recordings. The discovery provided to date is in excess of that required by Rule 16 of the Federal Rules of Criminal Procedure. The Government will continue to comply with the rules concerning discovery. The defendant's specific requests are discussed below.

   2. <u>The Government Has Already Disclosed Information Subject to Disclosure under Rule 16(a)(1)(A) and (B) of the Federal Rules of Criminal Procedure.</u>

The Government has already disclosed the written and recorded

statements of the defendant and his co-defendant, as well as the substance of any relevant oral statements they made in response to questions by Government agents.

The defendant is not entitled to summaries of oral statements of the defendant made to persons not known by her to be government agents, and the memorialization of any such statements in a written report does not make them discoverable as "written" statements of the defendants. United States v. Hoffman, 794 F.2d 1429, 1432, n.4 (9th Cir.1986).

The videos relating to the defendant's detention at the Port of Entry will be produced as soon as they are received. He was not arrested but was given a Notice to Appear. The notes of the interviewing agents have been produced.

3. The Government Will Comply with Rule 16(a)(1)(D).

The Government had provided the defendant with a copy of the printout of the results of the database check for evidence of prior convictions, and will provide the criminal history report for his co-defendant as soon as it is received. Once the witnesses the government intends to call in its case in chief are identified, records of any evidence of prior convictions for those individuals will be disclosed.

The Government is well aware of and will fully perform its duty under Brady v. Maryland, 373 U.S. 83 (1963) and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment, as well as its duty under Giglio v. United States, 405 U.S. 150 (1972) to provide information on any benefits provided to Government witnesses in exchange

for their testimony and impeachment material. The Government agrees to provide this information at least one week prior to trial, after all of the trial witnesses have been identified.

    4.   <u>The Government Will Comply with Rule 16(a)(1)(E).</u>

The Government will permit the defendant to inspect and copy or photograph all books, papers, documents, photographs, tangible objects, buildings, or places, or portions thereof, which are within the possession, custody, or control of the Government, and which are material to the preparation of the defendant's defense or are intended for use by the Government as evidence-in-chief at trial or were obtained from or belong to the defendant, and agrees to preserve such evidence during the pendency of this proceeding.

The defendant is not entitled to all evidence known or believed to exist which is, or may be favorable to the accused, or which pertains to the credibility of the Government's case. As stated in <u>United States v. Gardner</u>, 611 F.2d 770 (9th Cir. 1980), it must be noted that:

> "[T]he prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality."
> <u>Id.</u>, 611 F.2d at 774-775 (citations omitted).

<u>See</u> <u>also</u> <u>United States v. Sukumolachan</u>, 610 F.2d 685, 687 (9th Cir. 1980) (the Government not required to create exculpatory material that does not exist); <u>United States v. Flores</u>, 540 F.2d 432, 438 (9th Cir. 1976) (<u>Brady</u> does not create any pretrial discovery privileges not contained in the Federal Rules of Criminal Procedure). All physical evidence collected to date will be

preserved. The photographs taken at the Port of Entry have been disclosed. The TECS records related to the defendant will be provided as soon as they are received.

### 5. The Government Will Comply with Rule 16(a)(1)(F)

No scientific testing of the pesticides has been performed. To the extent such evidence is created in the future, the Government will provide the defendant with the results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are within the possession of the Government, and will continue to provide any further such reports that by the exercise of due diligence may become known to the attorney for the Government and are material to the preparation of the defense or are intended for use by the Government as evidence-in-chief at the trial.

### 6. The Government Will Comply with Rule 16(a)(1)(G)

No reports of experts have been prepared to date. The Government will provide any summaries of expert testimony as such evidence is identified as the case proceeds to trial, but no later than two weeks prior to trial.

### 6. Jencks Material

Production of witness statements is governed by the Jencks Act, 18 U.S.C. § 3500, and need occur only after the witness testifies on direct examination. United States v. Taylor, 802 F.2d 1108, 1118 (9th Cir. 1986); United States v. Mills, 641 F.2d 785, 790 (9th Cir.), cert. denied, 454 U.S. 902 (1981). Indeed, even material believed to be exculpatory and therefore subject to disclosure under the Brady

doctrine, if contained in a witness statement subject to the Jencks Act, need not be revealed until such time as the witness statement is disclosed under the Act. See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979). As a practical matter, the government has disclosed the reports of the investigation, so advance Jencks material has already been provided.

7. Prior Similar Act Evidence

To the extent that the government has evidence currently in its possession that might be argued to be admissible under Rule 404(b) relating to instances of the illegal imports of pesticides, it has been disclosed, or will be disclosed. Such evidence would be found in the statements of the co-defendants or may also be found information downloaded from the defendant's phone.

8.   Henthorn Material

The government will conduct a review of the personnel files of the federal agents involved in the case, and any impeachment material falling within the purview of United States v. Henthorn, 931 F.2d 29 (9th Cir.1991) will be disclosed.

9.   Impeachment Information

The defendant may request various categories of impeachment evidence, including bias or motive to lie, evidence of criminal investigation or convictions, and evidence affecting perception. The government has disclosed much of the evidence currently in its possession that falls into this category, but this disclosure is not yet complete. The government will disclose such evidence in compliance with its

continuing obligations under Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972) no later than one week before trial, when the witnesses for trial have been identified.

    10.   Records Applicable to Sentencing.

The defense seeks records affecting sentencing. The United States has provided full discovery regarding the facts of the case and the defendant's criminal record. Accordingly, the government has complied with this request, to the extent possible without further amplification of the nature of the desired records.

B. PHYSICAL EVIDENCE WILL BE PRESERVED.

The defense requests that all physical evidence in the case, including the pesticides, the defendant's personal effects, his cell phone and the agents' notes be preserved. The United States has no objection to this request and has directed the case agents to preserve all such evidence.

C. FURTHER MOTIONS SHOULD BE EVALUATED INDIVIDUALLY.

The Government requests that the court not grant a blanket request to file further motions but instead evaluate each motion to determine whether it is based on newly disclosed evidence or instead could have been filed at the time of this motion.

## IV.
## CONCLUSION

The United States respectfully requests that the court deny the defendant's motions, to the extent they are opposed herein.